**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 2, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 2, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| LOGAN MAGNEY, a minor; CALEB MAGNEY, a minor; BRIAN MAGNEY and EMILY MAGNEY,<br><br>Petitioners,<br><br>v.<br><br>TRUC PHAM, MD; AYUMI I. CORN, MD; LIQUN YIN, MD; and INCYTE DIAGNOSTICS, a Washington corporation,<br><br>Respondents. | No. 96669-9<br><br>En Banc<br><br>Filed __July 2, 2020__ |

WIGGINS, J.*—This case concerns whether petitioners/parents waived the marital counseling privilege when they filed a claim for damages against the doctors who treated their infant son on the ground that the child was misdiagnosed with cancer. Prior to the alleged misdiagnosis, Brian and Emily Magney had engaged in and completed marital counseling. Defendant doctors sought discovery of the records, but the Magneys filed a motion for a protection order to prevent disclosure given that the records are privileged. The superior court denied the motion and ordered

---

* Justice Charles Wiggins is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

1

disclosure, analogizing the marital counseling privilege to the psychologist-client privilege, which the Court of Appeals has held is automatically waived when emotional distress is at issue.

We reverse the superior court. The Magneys did not automatically waive privilege because filing a lawsuit is not one of the enumerated exceptions under the "marital counseling" privilege statute.[1] However, this court has a limited record of the parties' discovery and no way of knowing the contents of the marital privilege records. Therefore, we cannot determine on the record whether the privilege has been impliedly waived by the actions of the Magneys at this point in litigation. We accordingly remand to the superior court to review the records and evidence the parties submit and to determine whether the Magneys have impliedly waived privilege consistent with section II of this opinion (discussing the test for implied waiver). If the trial court determines in camera that the Magneys have impliedly waived privilege, the trial court must then determine, in camera, whether any of the marital counseling records are relevant to the case and, thus, discoverable.

The concurrence/dissent agrees that the Magneys did not automatically waive privilege by filing a lawsuit seeking damages for mental anguish and agrees with the rejection of the automatic waiver analysis in *Lodis v. Corbis Holdings, Inc.*, 172 Wn.

---

[1] *See* RCW 5.60.060(9). Although this statute references a privilege for many different types of professionals who can offer myriad types of counseling and consulting, because Brian and Emily were engaged in marital counseling we occasionally refer to the privilege at issue in the present case as the marital counseling privilege. However, all analysis would equally apply to any privileged communication between parties with the proper relationship as defined under RCW 5.60.060(9) regardless of whether the type of counseling or consulting is marital counseling.

App. 835, 854, 292 P.3d 779 (2013). *See* concurrence/dissent at 1, 7. The concurrence/dissent also agrees that *McUne v. Fuqua,* 42 Wn.2d 65, 76, 253 P.2d 632 (1953), controls the resolution of this case such that the filing of a lawsuit is not sufficient to waive privilege and a party must affirmatively offer evidence or testimony to waive a privilege. Concurrence/dissent at 17. It further agrees that if the Magneys call their counselor as a witness at trial or testify as to the substance of their counseling sessions, then they may have waived the privilege. *Id.* at 18.

However, the concurrence/dissent mischaracterizes this majority opinion as conflating waiver of privilege and relevancy and, thus, incorrectly concludes that this opinion "eviscerates the legislatively created privilege." *Id.* at 1. To the contrary, we conclude that the discretion of whether a privilege has been impliedly waived belongs to the trial court judge, who has access to the entirety of the record of the case and who can determine whether any disclosures thus far impliedly waived the privilege. Therefore, we remand for an in camera determination of whether the Magneys have impliedly waived privilege through any of their actions thus far and, if so, whether any records are relevant.

FACTS AND PROCEDURAL HISTORY

In 2017, the Magneys filed a medical negligence claim on behalf of themselves and their two sons, Logan and Caleb, seeking damages for "severe and permanent injuries, both mental and physical, pain and suffering and mental anguish as well as loss of consortium." Clerk's Papers (CP) at 7. The Magneys named as defendants Truc T. Pham, MD; Ayumi I. Corn, MD; Liqun Yim, MD; and Incyte Diagnostics.

(collectively Respondents).[2] In the complaint, the Magneys allege that in 2015, respondents misdiagnosed Logan with acute myeloid leukemia and subjected him to unnecessary chemotherapy when he was an infant.[3]

During discovery, Respondents learned that the Magneys had engaged in marital counseling in 2014 prior to Logan's diagnosis. The Magneys have not engaged in marital counseling, or any other type of counseling, since Logan's diagnosis. Respondents subsequently served the Magneys with interrogatories and requests for production of documents related to the Magneys' marital counseling.

The Magneys filed a motion for a protective order to prevent disclosure of the records, arguing that records are privileged under the marital counseling privilege codified in RCW 5.60.060(9) and that they did not waive the privilege. They further alleged that the counseling records are not relevant to any issue in the medical negligence suit as they did not put their marital relationship at issue. The Magneys allege the "loss of consortium" claim refers to the loss of consortium of the parent-child relationship between Mrs. Magney and Logan, and Mr. Magney and Logan, but not the marital relationship between Mrs. Magney and Mr. Magney. CP at 15. In the

---

[2] Dr. Pham and Incyte Diagnostics are represented by the same counsel, and Dr. Corn and Dr. Yim are represented by the same counsel. Although the respective groups of parties filed their own answers to the motions for discretionary review both here and at the Court of Appeals, as well as a joint motion to modify our commissioner's ruling granting review, only Dr. Pham and Incyte Diagnostics have filed a response brief in this court. However, for ease of reference and because all respondents' interests are materially aligned, we refer to all respondents collectively and attribute Dr. Pham and Incyte Diagnostics' arguments to all respondents.

[3] The details surrounding the alleged misdiagnosis and treatment are not pertinent to the issue on appeal and, thus, are not discussed in detail.

alternative, the Magneys requested in camera review of the records given the highly sensitive nature of the records and that the Magneys are not even aware of what was said in each other's separate counseling sessions. In contrast, Respondents argued that because the Magneys sought damages for "mental anguish," any mental health records are relevant and the privilege is waived automatically.

The superior court denied the Magneys' motion for a protective order, denied in camera review of the records, and ordered the Magneys to produce the marital counseling records. CP at 107. The superior court judge reasoned that "privilege is waived based upon the fact that the mental health or anguish here has been put at issue." Verbatim Report of Proceedings at 27. The superior court judge further noted "concern[] about the sensitive nature of the records" and indicated that although in camera review "make[s] a bit of sense," it would not be "a very practical solution in these circumstances." *Id.* at 28-29. After the Court of Appeals denied review, this court granted discretionary review.

ANALYSIS

A trial court's ruling on the scope of discovery is reviewed for abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.,* 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). A judge abuses his or her discretion when a ruling is based on untenable grounds or untenable reasons or on an erroneous view of the law. *Id.* at 339. If a trial court bases a discovery ruling on an erroneous view of the law, the ruling is necessarily an abuse of discretion. *Id.*

Whether a privilege has been waived is reviewed de novo. *Steel v. Olympia Early Learning Ctr.,* 195 Wn. App. 811, 822, 381 P.3d 111 (2016) (waiver of attorney-

client privilege reviewed de novo (citing *Pappas v. Holloway*, 114 Wn.2d 198, 205, 787 P.2d 30 (1990))); *Lodis*, 172 Wn. App. at 854 (waiver of psychologist-client privilege reviewed de novo (citing *Dietz v. Doe*, 80 Wn. App. 785, 788, 911 P.2d 1025 (1996))).

Under CR 26(b)(1), parties in a civil action "may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." (Emphasis added.) The parties do not dispute that the Magneys' marital counseling records are privileged under RCW 5.60.060(9). They dispute whether the Magneys waived the privilege when they filed a claim for injuries to their child and alleged damages for mental anguish to themselves arising from the child's injuries. We reverse the superior court and hold that the Magneys did not waive the privilege because under the plain and unambiguous language of the marital counseling privilege statute, no automatic waiver applies. However, we remand for in camera review of whether the privilege has been impliedly waived.

I.    Statutory privileges are strictly construed to effectuate legislative intent

There are two types of privileges: common law privileges and statutory privileges. Common law privileges, such as the attorney-client privilege, are those privileges whose codifications are "merely declaratory of the common law." *State v. Emmanuel*, 42 Wn.2d 799, 815, 259 P.2d 845 (1953). The court has more latitude to interpret common law privileges. *See id.* (although not specified in the statute codifying the attorney-client privilege, we held that "[t]he same privilege accorded the attorney is extended to the client under the common-law rule" (citing *State v. Ingels*, 4 Wn.2d 676, 104 P.2d 944 (1940))). In contrast, when a privilege is created by statute

6

and thus is not a privilege found within the common law, it is considered to be in derogation of—that is, an exemption from—the common law, and the statute must be strictly construed. *See Petersen v. State*, 100 Wn.2d 421, 429, 671 P.2d 230 (1983) (psychologist-client privilege is created by statute in derogation of the common law and must be strictly construed); *Carson v. Fine*, 123 Wn.2d 206, 212-13, 867 P.2d 610 (1994) (physician-patient privilege is created by statute and is strictly construed (citing *Dep't of Soc. & Health Servs. v. Latta*, 92 Wn.2d 812, 819, 601 P.2d 520 (1979))). Unlike the attorney-client privilege, the marital counseling privilege is created by statute and must be strictly construed by interpreting the specific words in the statute that the legislature has codified. *See Petersen*, 100 Wn.2d at 429.

"When construing a statute, our goal is to determine and effectuate legislative intent." *Swinomish Indian Tribal Cmty. v. Dep't of Ecology*, 178 Wn.2d 571, 581, 311 P.3d 6 (2013) (citing *TracFone Wireless, Inc. v. Dep't of Revenue,* 170 Wn.2d 273, 281, 242 P.3d 810 (2010); *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

We start with the plain and unambiguous language of a statute. *Campbell & Gwinn*, 146 Wn.2d at 9-10. "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* "[T]he plain meaning is . . . derived from what the Legislature has said in its enactments, but that meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11. "[I]f, after this inquiry, the statute remains susceptible to more than one

reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Id.* at 12.

In interpreting a statute we must also keep in mind the interpretive canon expressio unius est exclusio alterius, i.e., "[w]here a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature." *Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969).

A. <u>The Magneys did not waive privilege under the clear and unambiguous text of RCW 5.60.060(9)</u>

To understand the issue before the court, we examine the structure of RCW 5.60.060. This statute is divided into 10 subsections, each of which identifies one or more privileges and states when the privilege can be lost or waived. Some of these privileges have existed for considerable time, others are more recent. Some came to us as part of the common law, others were created by the legislature. Each subsection of RCW 5.60.060 also includes any limitations or exemptions on that particular privilege. The primary privilege at issue here is the marital counseling privilege under RCW 5.60.060(9). We first examine the plain language of the marital counseling privilege and then turn to the structure of RCW 5.60.060 as a whole.

RCW 5.60.060(9), which is at issue here, provides in part (the entire section is quoted in the footnote below[4]):

---

[4]        (9) A mental health counselor, independent clinical social worker, or marriage and family therapist licensed under chapter 18.225 RCW may not disclose, or be compelled to testify about, any information acquired from persons consulting the individual in a professional capacity when the

(9) A mental health counselor, independent clinical social worker, or marriage and family therapist licensed under chapter 18.225 RCW may not disclose, or be compelled to testify about, any information acquired from persons consulting the individual in a professional capacity when the information was necessary to enable the individual to render professional services to those persons except:

. . . .

(b) If the person waives the privilege by bringing charges against the mental health counselor licensed under chapter 18.225 RCW;

. . . or

(e) To any individual if the mental health counselor, independent clinical social worker, or marriage and family therapist licensed under chapter 18.225 RCW reasonably believes that disclosure will avoid or minimize an imminent danger to the health or safety of the individual or any other individual; however, there is no obligation on the part of the provider to so disclose.

---

information was necessary to enable the individual to render professional services to those persons except:

(a) With the written authorization of that person or, in the case of death or disability, the person's personal representative;

(b) If the person waives the privilege by bringing charges against the mental health counselor licensed under chapter 18.225 RCW;

(c) In response to a subpoena from the secretary of health. The secretary may subpoena only records related to a complaint or report under RCW 18.130.050;

(d) As required under chapter 26.44 [abuse of children] or 74.34 RCW [abuse of vulnerable adults] or RCW 71.05.360 (8) and (9) [involuntary treatment act disclosures]; or

(e) To any individual if the mental health counselor, independent clinical social worker, or marriage and family therapist licensed under chapter 18.225 RCW reasonably believes that disclosure will avoid or minimize an imminent danger to the health or safety of the individual or any other individual; however, there is no obligation on the part of the provider to so disclose.

9

Under the *Campbell & Gwinn* framework, we begin by looking at the plain language of the statute in the context of the conditions and exceptions stated in RCW 5.60.060(9). The limitations on the privilege include waiver by the holder of the privilege "[i]f the person waives the privilege by bringing charges against the mental health counselor licensed under chapter 18.225 RCW." RCW 5.60.060(9)(b). But no one is claiming in this case that the Magneys brought charges against their mental health counselor; rather, they filed a suit against their child's medical team.

As codified, there is no enumerated automatic waiver for filing a medical negligence claim against a child's treating physician for loss of parent-child consortium and mental anguish. The plain language, or lack of language, of the statute thus indicates this is not an automatic waiver of privilege, nor should it be. To read an automatic waiver into the statute would violate the interpretive canon expressio unius est exclusio alterius. The legislature has specifically enumerated the situations in which the marital counseling privilege does not apply or is waived such that a counselor may share privileged information—the present case is not one of the situations in which there is a waiver. Under the plain meaning of the statutory language, the Magneys have not waived the protection of the statute.

B.	The structure of RCW 5.60.060 precludes the court from rewriting the statute consistently with the Respondents' reading

Further, the structure of RCW 5.60.060 precludes this court from reading an automatic waiver into the statute. Within RCW 5.60.060, the legislature has specifically codified 10 privileges. As noted above, some of the privileges are codifications of the common law, e.g., the attorney-client privilege, while others are

derogations from the common law, e.g., the physician-patient privilege. *See Youngs v. PeaceHealth*, 179 Wn.2d 645, 650-51, 316 P.3d 1035 (2014) (attorney-client privilege is the oldest common law privilege; legislature enacted physician-patient privilege statute, RCW 5.60.060(4)); *Carson*, 123 Wn.2d at 212-13. For privileges that are statutory in origin, whether there is a waiver must be evaluated in light of the legislature's explicit definition of waiver for that particular privilege.

The legislature wrote the 10 subsections of RCW 5.60.060 in the same style for each subsection. Each subsection defines the privilege followed by provisions on how the privilege might be waived or lost, if applicable. The marital and family privilege at issue here is defined by subsection (9), followed by a list of five exceptions and conditions. It would be contrary to this structure for this court to pick and choose among the other subsections of the statute to dredge up different exceptions and conditions from other subsections and impose these "borrowed" exceptions on a different privilege. There is only *one* privilege under RCW 5.60.060 that includes an automatic waiver upon the filing of a lawsuit: the physician-patient privilege. *See* RCW 5.60.060(4)(b) (a patient automatically waives the physician-patient privilege 90 days after filing a personal injury or wrongful death suit). That this statutory privilege includes an automatic waiver, and the marital counseling privilege does not, shows that the legislature knows how to create an automatic waiver but chose not to do so in the marriage and family counseling context.

The plain language of the statute, the lack of ambiguity in the statute, the legislature's clear choice of the different circumstances under which each privilege can be lost or waived, and the very structure of the statute lead us to the conclusion

that there is no automatic waiver of the marital counseling privilege. The legislature has explicitly chosen to include automatic waiver only in the context of the physician-patient privilege. Therefore, the superior court erred when it denied the Magneys' motion for a protection order on the basis of automatic waiver.

      C.     <u>Our jurisprudence previously linking the physician-patient privilege and the psychologist-client[5] privilege similarly does not allow us to read the automatic waiver into the marital counseling privilege</u>

The Respondents argue that because the psychologist-client privilege and the marital counseling privilege "provide substantially the same protections" and the Court of Appeals has extended the physician-patient privilege's automatic waiver to the psychologist-client privilege, the automatic waiver should be expanded to the marital counseling privilege as well. Br. of Resp'ts at 5. This argument is unpersuasive given the different statutory language among the defining privileges and waiver of privileges and given the history of the interplay of the physician-patient privilege and the psychologist-client privilege in our jurisprudence.

Although they are found in different chapters of the RCW, the physician-patient privilege and the psychologist-client privilege have been linked within Washington case law. Because the Respondents rely on this link, it is important to examine the history of these privileges, how we have previously interpreted the physician-patient

---

[5] The psychologist-client privilege is sometimes referred to as the psychologist-patient privilege. Because the statute refers to a psychologist and a client, we refer to the privilege as psychologist-client privilege. *See* RCW 18.83.110.

privilege, and the legislature's explicit choices in amending the physician-patient privilege.

The physician-patient privilege is found in the same statute as the marital counseling privilege and reads, "[A] physician or surgeon . . . shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him or her to prescribe or act for the patient." RCW 5.60.060(4). This privilege has only two statutory exceptions: (a) the privilege does not apply to proceedings regarding child abuse or neglect and (b) the patient automatically waives the physician-patient privilege 90 days after filing a personal injury or wrongful death suit. RCW 5.60.060(4)(a)-(b). As noted above, the fact that the physician-patient privilege explicitly contains an automatic waiver, and the marital counseling privilege contained in the same statute does not, lends *more* support to the conclusion that the legislature explicitly chose not to include the automatic waiver for the marital counseling privilege.

The psychologist-client privilege reads, "Confidential communications between a client and a psychologist shall be privileged against compulsory disclosure to the same extent and subject to the same conditions as confidential communications between attorney and client" and also are subject to the involuntary treatment act. RCW 18.83.110. In *Petersen,* we held that RCW 18.83.110 "essentially provides the same protection to psychologist-[client] communications as is provided by RCW 5.60.060 for communications between physician and patient." 100 Wn.2d at 429. However, when *Petersen* was decided*,* RCW 5.60.060(4) did not include the automatic waiver provision found in the current statute.

13

In 1986, approximately three years after *Petersen*, the legislature amended the physician-patient privilege to provide that a "'[w]aiver of the physician-patient privilege for any one physician or condition constitutes a waiver of the privilege as to all physicians or conditions, subject to such limitations as a court may impose pursuant to court rules.'" *Youngs*, 179 Wn.2d at 658 (alteration in original) (quoting LAWS OF 1986, ch. 305, § 101(4)(b)). The legislature amended the statute again in 1987 to include the current 90-day automatic waiver language. *Id.* (citing LAWS OF 1987, ch. 212, § 1501(1)(b)). In *Carson* we noted that these legislative amendments were "a codification of existing Washington case law which holds that waiver occurs even without plaintiff's express consent." 123 Wn.2d at 213.

But when *Carson* was decided, the implied waiver in our case law at the time did not occur when a personal injury case was *filed.* Our case law at the time of *Petersen* indicated "introduction by the patient of medical testimony describing the treatment and diagnosis of an illness waive[d] the privilege as to that illness, and the patient's own testimony to such matters has the same effect." *Carson*, 123 Wn.2d at 213 (citing *Randa v. Bear,* 50 Wn.2d 415, 421, 312 P.2d 640 (1957) (respondent waived physician-patient privilege when she filed a cross claim relating to the medical service contract); *McUne,* 42 Wn.2d at 76 (when a patient introduces medical testimony about an ailment, he waives privilege as to that ailment)). Although *Randa* appears to create an automatic waiver when a claim is filed, the case involves contract interpretation and not the filing of a personal injury case.

Post-*Randa*, in *Bond v. Independent Order of Foresters*, 69 Wn.2d 879, 881, 421 P.2d 351 (1966), we held that

> [t]he bringing of an action for personal injuries does not constitute a waiver of the statute. The legislature expressly provided that a regular physician or surgeon shall not be examined in a civil action as to any information acquired in attending a patient, without such patient's consent. This legislative enactment is a clear and positive mandate.

(Emphasis omitted.) Thus, we explicitly rejected the assertion that under *Randa* and *McUne*, "the bringing of an action for personal injuries constitutes a waiver of the statutory physician-patient privilege." *Id.* We further noted, "in several jurisdictions the physician-patient privilege statutes specifically provide that the privilege is waived when a civil action for personal injuries is instituted. *Whether RCW 5.60.060(4) should be so amended is a legislative function which rests within the sole discretion of the legislature*" because it is a statutory privilege. *Id.* at 882 (emphasis added). *See also Kime v. Niemann*, 64 Wn.2d 394, 396-97, 391 P.2d 955 (1964) (noting that while many states had enacted statutes indicating a patient waives the physician-patient privilege upon filing an action, Washington has no such enactments and, therefore, an order providing that the privilege was waived upon filing was set aside).

Therefore, the legislative amendments to the physician-patient privilege were *not* a codification of Washington case law allowing for automatic waiver when a personal injury claim is filed. The amendments were the legislature's explicit decision to follow a majority of states that had codified automatic waiver. The history of the physician-patient privilege thus exemplifies that in examining a statutory privilege, we look to the explicit language that the legislature has codified. Because prior to 1986 the legislature had not enacted an automatic waiver upon the filing of a personal injury case, the filing of a personal injury case was not an automatic waiver. Similarly, in this case, because the legislature has not provided that the filing of a medical negligence

15

action against one's child's health care team waives the marital counseling privilege, the Magneys did not automatically waive the privilege.

Respondents rely on the Court of Appeals decision in *Lodis*, to urge this court to find an automatic waiver of the marital counseling privilege for seeking damages for mental anguish. In *Lodis*, the plaintiff sought damages for emotional distress but refused to comply with a discovery request for psychological records, claiming psychologist-client privilege. 172 Wn. App. at 844. The defendant then filed a motion in limine to prevent Lodis from introducing evidence of emotional distress, and the trial court found that Lodis waived psychologist-client privilege by seeking damages for emotional distress. *Id.* On reconsideration the trial court ruled that Lodis could waive the privilege and produce the records or strike the emotional distress claim. *Id.* Lodis refused to waive the privilege, and the trial court precluded him from introducing evidence of emotional distress. *Id.* This action was consistent with an *implied* waiver of the privilege as introduction of the evidence would impliedly waive the privilege.[6]

In the course of evaluating waiver of privilege in the *Lodis case,* instead of analyzing the psychologist-client privilege under a theory of implied waiver, the Court of Appeals equated the physician-patient privilege and the psychologist-client privilege based on the language from *Petersen.* This had the effect of expanding RCW 5.60.060(4)(b)'s automatic waiver rule to the psychologist-client privilege. *Lodis*, 172 Wn. App. at 855-56.

---

[6] The next section of this opinion discusses implied waiver in greater detail.

The *Lodis* court examined the three different approaches in the federal courts to emerge in the wake of *Jaffe v. Redmond*:[7] the broad approach (waiver when emotional distress alleged in the complaint, which would equate to an automatic waiver), the middle approach (waiver when more than general emotional distress), and the narrow approach (waiver only when affirmatively relying on the privileged conversations).[8] *Lodis*, 172 Wn. App. at 855. Although Lodis urged the court to adopt the middle or narrow approach, the Court of Appeals declined to do so because Lodis could not point to Washington case law that would require the court to treat the physician-patient privilege and the psychologist-client privilege differently. *Id.* Ultimately the court held that when a plaintiff seeks damages for mental anguish, he or she waives the privilege as to all mental health records. *Id.* at 856.

However, the legislative addition of the automatic waiver requirements post-*Petersen*, calls into question the language from *Petersen* equating the physician-patient privilege and the psychologist-client privilege. The *Lodis* court incorrectly relied on this connection as the legislature has not added an automatic waiver to the psychologist-client privilege. But even if it were correct, *Lodis* would be neither persuasive nor controlling in this case because *Lodis* did not involve the marital counseling privilege, and the marital counseling privilege is not sufficiently analogous to the psychologist-client privilege to equate them.

---

[7] 518 U.S. 1, 14, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996) (holding there is a federal psychologist-client privilege in part because all 50 states and the District of Columbia had some version of the privilege enacted as law).

[8] The concurrence/dissent devotes almost the entirety of the opinion to the discussion of out-of-state and federal authority on these three approaches.

II.    <u>A lack of automatic waiver for a privilege does not preclude an implied waiver of privilege</u>

Although we hold that the Magneys did not automatically waive privilege by filing the lawsuit, we remand to the superior court to determine whether the Magneys impliedly waived the marital counseling privilege. Therefore, we examine the law surrounding the implied waiver and how courts should evaluate whether a party has impliedly waived privilege.

As briefly discussed in the previous section, this court has examined the implied waiver in the context of the physician-patient privilege. In *McUne*, a passenger involved in an automobile accident testified about ailments he allegedly sustained in the accident. 42 Wn.2d at 74. He also called three physicians to testify about his ailments. *Id.* After trial, the driver moved for a new trial, alleging that he had newly discovered that a doctor of the passenger would testify that the passenger had sustained some of the ailments prior to the accident. *Id.* at 73. The passenger objected to the new testimony on the basis of physician-patient privilege. *Id.* On appeal, we indicated that "[w]hen a patient permits his physician to testify without objection, he of course waives the privilege as to that physician." *Id.* at 74. This implied waiver would also apply to other physicians who worked on the patient at the same time and consulted with the testifying physician. *Id.* Further, a patient also impliedly waives the privilege when he takes the witness stand and testifies as to the ailments at issue. *Id.* at 76. In addition, by taking the stand he impliedly waives the privilege as to any impeachment or contradictory medical testimony as to the ailments at issue. *Id.* We accordingly remanded for a new trial on the issue of damages. *Id.* at 79.

What follows from this precedent is that a person impliedly waives privilege on an issue when that person testifies, introduces evidence, or fails to object to another's testimony as to the ailment or privileged conversation.

There are some causes of action where the marital counseling privilege would almost certainly be impliedly waived. For example, a cause of action for loss of consortium within a marital relationship would likely waive the marital counseling privilege because it would undoubtedly require testimony as to the health of the marriage. But this would be waived upon the introduction of evidence or testimony, or disclosed intent to do so, not by filing the lawsuit. However, other causes of action, such as the "mental anguish" in the present case, require a closer look as to whether there truly is a waiver in the context of the applicable privilege and the facts of the case.

Based on the record before us we cannot know the extent of any mental anguish discussed within the Magneys' marital counseling or whether that particular mental anguish has any bearing on or connection to the mental anguish as pleaded in the complaint. We therefore remand to the superior court to determine whether the privilege would be impliedly waived by the introduction of evidence related to the mental anguish pleaded in this case. If the trial court determines that the record shows that the Magneys have so impliedly waived privilege by providing the defendants with evidence of mental anguish akin to that which was discussed during the marital

19

counseling, then the trial court must determine what, if any, of the records are relevant to the current litigation and, thus, discoverable.[9]

      III.    <u>When determining if a party has impliedly waived the marital counseling privilege, the court must conduct in camera review if the party holding the privileges requests it</u>

We review a trial court's decision denying in camera review of records for abuse of discretion. *See State v. Kalakosky*, 121 Wn.2d 525, 550, 852 P.2d 1064 (1993) (trial court's decision not to hold in camera review of records was within the court's discretion).

Although the superior court noted concern over the sensitive issues contained within the marital counseling records, the superior court denied in camera review of the records to determine relevance. We hold that courts must allow in camera review of marital counseling records both in determining whether the privilege has been impliedly waived and subsequently whether the records are relevant.[10] We hold this because of the importance of the family, the sensitive nature of the records, the potential to reveal individual privileged information unknown to the other spouse, and because other privileged information is reviewed in camera.

---

[9] The concurrence/dissent asserts the majority conflates implied waiver and relevance because we remand for a determination of implied waiver based on the privileged records in the present case. Concurrence/dissent at 3-4. On the contrary, it is to determine whether evidence or disclosures that have been given to the defendants were discussed in the counseling, in which case there could be an implied waiver. If, during in camera review, the court determines the party has impliedly waived the privilege, that does not mean all records are relevant. The court would then engage in a relevance analysis if the privilege has been waived to determine what evidence is discoverable.

[10] We note that a court does not need to view the records to determine if the privilege has been waived under the enumerated exceptions in RCW 5.56.060(9).

20

One purpose of privileges is to encourage full disclosure of information and proper treatment. *See Carson*, 123 Wn.2d at 213 (discussing purpose of physician-patient privilege). In the case of marital counseling, full disclosure can concern any number of potential issues that a married couple face. It is undisputed that the records of each spouse include privileged information of which the other spouse is unaware: both Mr. Magney and Mrs. Magney engaged in counseling sessions with separate counselors and both are unaware of what their partner said of them. Revealing privileged information, which is currently unknown between spouses, could have negative ramifications on the family beyond this litigation. This is especially concerning when the court does not know if the privilege has been waived or if the records are relevant.

In deciding to not engage in in camera review, the superior court noted that the information may not be admissible at trial. But inadmissibility at trial does not rectify the potential harm to a family from the disclosure of privileged thoughts shared with a marriage counselor; once privileged information is disclosed, it cannot be retracted: "no bell can be unrung." *Dana v. Piper*, 173 Wn. App. 761, 769, 295 P.3d 305 (2013) (referencing disclosure of files protected by the attorney-client privilege). To prevent undue disclosure and harm to the spouses and family unit, we hold that courts must review marital counseling records in camera if the party holding the privilege requests in camera review. This is consistent with other types of privileged information and sensitive topics that are reviewed for relevance and privilege in camera. *See, e.g.*, *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wn.2d 686, 699, 295 P.3d 239 (2013) (insurance company entitled to in camera review of a claims file to determine what

information is subject to attorney-client privilege); *Fellows v. Moynihan*, 175 Wn.2d 641, 646, 285 P.3d 864 (2012) (remanding to superior court to conduct in camera review of peer review and quality improvement records subject to privilege under RCW 70.41.200); RCW 70.125.065(3) (sexual assault program records are reviewed in camera to determine if any information is relevant). Further, it would allow the court to redact and withhold any irrelevant privileged information.

We hold that refusing in camera review of the marital counseling records was untenable, and the superior court abused its discretion in not allowing in camera review. We remand to the superior court for an in camera review of the marital counseling records to determine whether the Magneys impliedly waived the marital counseling privilege and, if so, the relevance of any information within the records.

CONCLUSION

We reverse the superior court and vacate the order denying the Magneys' motion for a protective order. We remand to the superior court for in camera review of the Magneys' marital counseling records to determine whether the Magneys impliedly waived the privilege and, if so, whether any privileged information is relevant to the present case.

Wiggins, JPT

WE CONCUR.

Stephens, C.J.

Madsen, J.

Owens, J.

Gordon McCloud, J.

Fairhurst, JPT

No. 96669-9

GORDON McCLOUD, J. (concurring in part/dissenting in part)—Truc

Pham, MD; Ayumi I. Corn, MD; Liquin Yin, MD; and Incyte Diagnostics

(collectively respondents) seek marital counseling records from Brian and Emily

Magney. Everybody agrees that those records start out as privileged under RCW

5.60.060(9). Respondents assert that the Magneys automatically waived privilege

simply by filing a lawsuit in which they seek damages for mental anguish. The

majority rejects that assertion, and I agree.

But the majority also instructs the trial court to conduct in camera review of

the counseling records to determine whether they are relevant, seemingly

suggesting that maybe the Magneys did waive privilege by filing this lawsuit after

all. In doing so, the majority conflates waiver with relevancy. That conflation of

waiver and relevancy effectively eviscerates the legislatively created privilege.

Instead, the implied waiver inquiry must be kept separate from the relevancy

inquiry. When the separation is respected, it becomes clear that the Magneys have

1

not impliedly waived privilege at this point in the litigation.  I would therefore reverse the trial court's decision to order the Magneys to produce their marital counseling records.

Thus, I respectfully concur in part and dissent in part.

ANALYSIS

Under our court rules, "[p]arties may obtain discovery regarding any matter, *not privileged*, which is *relevant* to the subject matter in the pending action."  CR 26(b)(1) (emphasis added).  Thus, respondents may obtain the marital counseling records that they seek only if the records are (1) not privileged and (2) relevant.

Under the first inquiry, the court must determine whether the records are privileged and, if they are, whether privilege has been waived.  Under the second inquiry, which is reached only if the records are not privileged or if privilege has been waived, the court must determine whether the records are relevant.  For discovery purposes, the records are relevant if they "appear[] reasonably calculated to lead to the discovery of admissible evidence." *Id.*[1]  Finally, if the records are discoverable, the court should determine whether a protective order or other

---

[1] The records may be discoverable even if they are later deemed inadmissible at trial.  CR 26(b)(1) ("It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.).

2

remedy is appropriate "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." CR 26(c).

I would hold that the Magneys' marital counseling records are privileged and that the Magneys have not waived privilege (at least not at this point in the litigation). Thus, I begin and end my analysis with the first inquiry.

I.    The majority conflates the two inquiries

The majority correctly notes that the trial court must conduct both a waiver inquiry and a relevancy inquiry. Majority at 19-20. But the majority fails to keep separate those two distinct inquiries. Instead, the majority describes a waiver inquiry that is *exactly the same* as the relevancy inquiry.

As to the waiver inquiry, the majority instructs the trial court to examine the Magneys' marital counseling records to determine "the extent of any mental anguish discussed within the Magneys' marital counseling or whether that particular mental anguish has any bearing on or connection to the mental anguish as pleaded in the complaint." Majority at 19. Basically, the majority instructs the trial court to determine whether the marital counseling records are relevant to the current lawsuit. And if they are, then the Magneys waived privilege.

But if the waiver inquiry is essentially a relevancy inquiry, then what purpose does the separate relevancy inquiry serve? The majority is both conflating

waiver with relevancy and instructing the trial court to conduct redundant analyses. And by making waiver contingent on relevancy, the majority writes privilege out of existence. *See Johnson v. Trujillo*, 977 P.2d 152, 157 (Colo. 1999) ("'[R]elevance alone cannot be the test, because such a test would ignore the fundamental purpose of evidentiary privileges, which is to preclude discovery and admission of relevant evidence under prescribed circumstances.'" (quoting *R.K. v. Ramirez*, 887 S.W.2d 836, 842 (Tex. 1994)). *All* records are discoverable only if they're potentially relevant, not just privileged records. CR 26(b)(1).

In sum, before the court analyzes relevancy for purposes of discovery, it must first determine whether the records are privileged and, if so, whether that privilege has been waived. The waiver inquiry is distinct from the relevancy inquiry. Whether privilege has been waived is a difficult question because courts across the country have debated the proper test for making that decision and we have never chosen sides in that debate. We have to do that now to decide this case. I therefore describe the different sides in that debate and the pros and cons of each approach. I conclude that the "narrow" approach is the only one that is consistent with our privilege statute and with United States Supreme Court law on the clarity required to make this privilege work. I would therefore hold that for reasons entirely unrelated to relevance, the Magneys have not waived privilege.

4

II.     The federal courts have developed three approaches to waiver

Respondents seek records that are generally protected by privilege.  RCW 5.60.060(9).[2]  The primary issue before our court is whether the Magneys waived the privilege that the legislature afforded to them.

I agree with the majority that the Magneys did not waive privilege simply by seeking damages for mental anguish.  This holding finds support in our precedent regarding the statutory physician-patient privilege.  Before that statutory privilege was amended to include waiver "[n]inety days . . . after filing an action for personal injuries or wrongful death," *see* LAWS OF 1987, ch. 212, § 1501(4)(b), we had held that the mere filing of an action for personal injuries did not waive the privilege, *Bond v. Indep. Order of Foresters*, 69 Wn.2d 879, 880, 421 P.2d 351 (1966).  Thus, we have already rejected the sort of broad waiver that respondents advocate for here.

But determining exactly when a party waives privilege is a tougher question.  In *Phipps v. Sasser*, a personal injury case, we addressed when the privilege is waived, if not at filing.  74 Wn.2d 439, 445-46, 445 P.2d 624 (1968).  We

---

[2] The "marital counseling" privilege protects "information acquired from persons consulting the [counselor] in a professional capacity when the information was necessary to enable the [counselor] to render professional services to those persons."  RCW 5.60.060(9).  That is, the privilege protects the *substance* of the conversations.  It does not protect the fact that the conversations occurred or when they occurred.

5

acknowledged that the privilege holder could certainly impliedly waive privilege

prior to trial, and we held that whether the privilege holder has done so is left to the

trial court's discretion on a case-by-case basis. *Id.* at 446 ("Absent legislative

action, the trial court should proceed on a case-by-case basis rather than having

this court attempt to fix a precise event in the pretrial proceedings which, under all

conditions, would constitute an implied waiver."). But we didn't provide guidance

beyond that, much to the dissent's chagrin. *Id.* at 451-52 (Finley, C.J., dissenting).

Underscoring the difficulty of this issue, the federal courts have been unable

to reach a consensus on when the similar federal psychotherapist-patient privilege

is impliedly waived.[3] *See* Helen A. Anderson, *The Psychotherapist Privilege:*

*Privacy and "Garden Variety" Emotional Distress*, 21 GEO. MASON L. REV. 117,

134 (2013) (explaining that the federal appellate courts "have not set binding

---

[3] In *Jaffee v. Redmond*, the United States Supreme Court recognized a psychotherapist-patient privilege. 518 U.S. 1, 9-10, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996). The Supreme Court broadly defined the privilege to include "confidential communications made to licensed social workers in the course of psychotherapy." *Id.* at 15. It stands to reason that the privilege would also include confidential communications made to licensed marital counselors. In contrast to this all-in-one federal privilege, Washington has one statute that creates a psychologist-client privilege, RCW 18.83.110, and an entirely separate statute that creates several seemingly related privileges, including a social worker-patient privilege and the marital counseling privilege at issue here, RCW 5.60.060(9). Given the breadth of the federal privilege, federal case law on the psychotherapist-patient privilege may inform our decisions about how to handle cases involving either our psychologist-client privilege or the privileges contained in RCW 5.60.060(9), including the marital counseling privilege at issue here.

rules" and the district courts have taken various approaches). The federal courts have taken three different approaches: the broad approach, the narrow approach, and the middle ground approach. *Koch v. Cox*, 376 U.S. App. D.C. 376, 489 F.3d 384, 390 (2007). These three approaches, adopted by courts around the country, reflect a thorough and thoughtful analysis of the issue, and they more or less cover the gamut of possibilities. Thus, I believe that they are worth considering in detail.[4]

    A. The Broad Approach

Under the broad approach, a patient who places his or her mental condition at issue—for example, by "mak[ing] a claim for emotional distress"—waives privilege. *Koch*, 489 F.3d at 381 (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)). This is the approach taken by the Court of Appeals in *Lodis v. Corbis Holdings, Inc.*, 172 Wn. App. 835, 854-55, 292 P.3d 779 (2013). I agree with the majority's analysis and rejection of *Lodis*. In addition, as I noted above,

---

[4] The majority seems to suggest that it is not worth this court's time to examine cases from other state courts and from federal courts, pointing out that I "devote[] almost the entirety of [my] opinion to the discussion of out-of-state and federal authority." Majority at 17 n.8. I, however, believe that it is this court's duty to examine the law in full detail in order to reach the best decision possible. I am well aware that we are not bound by out-of-jurisdiction cases, but the fact that a case is not binding does not mean that it is not helpful. That is particularly true here, where our court has a dearth of case law (recent case law, at least) on the issue at hand, and where the out-of-jurisdiction cases neatly summarize the three different approaches we might take.

our court has already rejected the broad approach to waiver, albeit in a different context. *See Bond*, 69 Wn.2d at 880 (holding that the mere filing of a lawsuit for personal injuries does not waive the physician-patient privilege).

Aside from the problems with *Lodis* identified by the majority, there's another problem with adopting the reasoning from that case: our legislature has since rejected it. The privilege holder in *Lodis* filed his claim under the Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, and sought emotional damages. 172 Wn. App. at 842. The court adopted the broad approach and held that "when a plaintiff puts his mental health at issue by alleging emotional distress, he waives his psychologist-patient privilege for relevant mental health records." *Id.* at 855.

But the legislature has now passed a law that effectively overrules *Lodis*. *See* RCW 49.60.510. Under that new law,[5] a privilege holder who brings a WLAD claim does not waive privilege simply by requesting noneconomic damages such as emotional distress. RCW 49.60.510(1). Instead, a privilege holder waives privilege when he or she "[a]lleges a specific diagnosable physical or psychiatric injury as a proximate result of the respondents' conduct" or "[r]elies on the records or testimony of a health care provider or expert witness to seek general damages."

---

[5] The legislature recently amended this statute, but the changes have not yet gone into effect. S.B. 6236, 66th Leg., Reg. Sess. (Wash. 2020).

8

RCW 49.60.510(1)(a), (b).  Thus, not only was *Lodis* incorrectly decided for the reasons stated in the majority opinion, but it also has since been abrogated by our legislature.

Other courts have rejected the broad approach for the same reason I disagree with the majority's opinion: it largely overrides the privilege.  The Colorado Supreme Court rejected the broad approach in a case with facts that mirror those before us now.  *Johnson*, 977 P.2d 152.  There, Johnson brought a personal injury action in which she sought damages "for mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life."  *Id.* at 153.  One of the defendants sought "records from her marriage counseling sessions with her ex-husband."  *Id.* at 154.  Like Washington, Colorado has a statutorily created marital counseling privilege.  *Id.* at 155 (quoting COLO. REV. STAT. § 13-90-107(1)(g) (1998)).  The defendant claimed that the plaintiff had impliedly waived privilege by "inject[ing] her mental condition into the case."  *Id.* at 154.  The defendant argued that "[i]t would be unfair . . . if she were precluded from discovering potential causes of Johnson's mental and emotional suffering that are not related to the accident."  *Id.* at 156.

The Colorado Supreme Court rejected that argument.  *Id.* at 157.  The court noted that the defendant's "most compelling argument for why we should find an

implied waiver is that the information sought may be relevant to a determination of the extent to which Johnson's mental suffering is properly attributable to the accident as opposed to some other cause." *Id.* But the court held "that 'relevance alone cannot be the test, because such a test would ignore the fundamental purpose of evidentiary privileges, which is to preclude discovery and admission of relevant evidence under prescribed circumstances.'" *Id.* (quoting *R.K.*, 887 S.W.2d at 842).

Indeed, if relevance were the test, then privilege may as well not even exist, because even unprivileged material must be relevant to be discoverable. CR 26(b)(1) (allowing parties to discovery only material that "is relevant to the subject matter involved in the pending action"). Moreover, the United States Supreme Court has rejected any approach that takes relevancy into consideration: "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Jaffee v. Redmond*, 518 U.S. 1, 17, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996).

I would reject the broad approach to waiver.

B. The Narrow Approach

Under the narrow approach, a patient waives privilege by "'affirmatively placing the substance of the advice or communication directly in issue.'" *Koch*,

10

489 F.3d at 390 (quoting *Fitzgerald v. Cassil*, 216 F.R.D. 632, 638 (N.D. Cal. 2003)). For example, in *Vanderbilt v. Town of Chilmark*, the plaintiff alleged violations of various antidiscrimination and antiretaliation laws; for most of those violations, she sought damages for emotional distress. 174 F.R.D. 225, 226 (D. Mass. 1997). Courts applying the broad approach would have held that the plaintiff waived privilege simply by seeking damages for emotional distress. *See, e.g.*, *Schoffstall*, 223 F.3d at 823. But the court in *Vanderbilt* rejected the broad approach and instead opted for the narrow approach. 174 F.R.D. at 228. The court held that a plaintiff waives privilege only if he or she "puts the privileged communication itself at issue," by "us[ing] the substance of her communication, by calling her psychotherapist as a witness, for example, or by testifying to the substance of the communication herself." *Id.* at 230.

Courts that adopt the narrow approach treat waiver of the psychotherapist-patient privilege similarly to how they treat waiver of the attorney-client privilege. "A client waives [attorney-client] privilege when he puts the attorney-client relationship in issue—for example, by suing the attorney for malpractice or by claiming he relied upon the attorney's advice." *Koch*, 489 F.3d at 389 (citing *United States v. Moody*, 923 F.2d 341, 352-53 (5th Cir. 1991); CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, EVIDENCE § 5.30 (3d ed. 2003);

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 80 (AM. LAW INST.
2000)). "By analogy, a patient would waive the psychotherapist-patient privilege
when he sues the therapist for malpractice, or relies upon the therapist's diagnoses
or treatment in making or defending a case." *Id.* (citing *Vanderbilt*, 174 F.R.D. at
229).[6]

   To be sure, courts that adopt the broad approach also claim that they are
attempting to treat waiver of the psychotherapist-patient privilege the same way
they treat waiver of the attorney-client privilege—but that claim falls flat. For
example, in *Schoffstall*, a case often cited as an example of the broad approach, the
court reasoned "that, similar to attorney-client privilege that can be waived when
the client places the attorney's representation at issue, a plaintiff waives the
psychotherapist-patient privilege by placing his or her medical condition at issue."
223 F.3d at 823 (relying on several federal district court opinions). But that

---

[6] In *Pappas v. Holloway*, 114 Wn.2d 198, 787 P.2d 30 (1990), we examined when
a client impliedly waives attorney-client privilege. We held that the client does so when
he or she sues an attorney for malpractice. *Id.* at 208-09. In doing so, we applied a three-
prong test that we borrowed from a federal court. *Id.* at 207-08 (applying test from
*Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975)). Under one of those prongs, we
examined the opposing party's need for the evidence. *Id.* But as explained above, the
United States Supreme Court has since rejected any sort of analysis that balances the
importance of a privilege with the opposing party's need for the privileged evidence.
*Jaffee*, 518 U.S. at 17 ("Making the promise of confidentiality contingent upon a trial
judge's later evaluation of the relative importance of the patient's interest in privacy and
the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.").

comparison is imperfect. It equates placing one's *medical condition* at issue with

placing an *attorney's representation* at issue, *id.*, and the two do not equate:

"Asking whether the patient's *mental condition* is at issue is a very different

question from that asked in the context of determining waiver of the attorney-client

privilege: whether the client has put the *representation*—not the *topic* of

representation—at issue." Anderson, *supra*, at 124. Simply put, the *Schoffstall*

court's conclusion that "making a claim for emotional distress necessarily waives

the privilege . . . does not follow from the . . . analogy to the attorney-client

privilege." *Koch*, 489 F.3d at 389 (citing *Schoffstall*, 223 F.3d at 823).

At bottom, the narrow approach is tailored to protect privilege while at the

same time barring a party from wielding the privilege as a sword. *Id.* "'In other

words, a party cannot partially disclose privileged communications or affirmatively

rely on privileged communications *to support its claim or defense* and then shield

the underlying communications from scrutiny by the opposing party.'" *In re Sims*,

534 F.3d 117, 132 (2d Cir. 2008) (quoting *In re Grand Jury Proceedings*, 219 F.3d

175, 182 (2d Cir. 2000)).

As I discuss below, our court has already gone a long way toward adopting

the narrow approach, and I would explicitly do so here.

C.  The Middle Ground Approach

The middle ground approach reflects a compromise position adopted by those courts that believe that the broad approach protects privilege too little and the narrow approach protects it too much.  Under this approach, a patient waives the privilege by alleging more than "'"garden variety" emotional distress.'"  *Koch*, 489 F.3d at 390 (quoting *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 n.8 (D.N.J. 2000)).

But what is meant by "garden variety" is not entirely clear.  *See Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011) ("The problem in these cases is definitional and stems from the imprecision and elasticity of the phrase 'garden variety.'").  One court has identified five scenarios in which the claimed emotional distress is more than "garden variety."  *St. John v. Napolitano*, 274 F.R.D. 12, 19-20 (D.D.C. 2011).  According to that court, a party alleges more than "garden variety" emotional distress, and thus waives privileges, if he or she (1) asserts "'a cause of action for intentional or negligent infliction of emotional distress,'" (2) makes "'an allegation of a specific mental or psychiatric injury or disorder,'" (3) asserts "'a claim of unusually severe emotional distress,'" (4) makes an "'offer of expert testimony to support a claim of emotional distress,'" or (5) concedes "'that his or her mental condition is "in controversy."'"  *Id.* at 19 (quoting *Turner v.*

*Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)); *see also Johnson*, 977 P.2d at

157 (applying similar analysis).

The absence of an obvious definition of "garden variety" emotional distress,

along with the required in-depth analysis that goes with it, has led some courts to

reject the middle ground approach. As one court explained, "the use of a test for

waiver that hinges on an after-the-fact judicial assessment of numerous qualitative

factors introduces a risk of uncertainty that the Supreme Court in *Jaffee* sought to

avoid." *Fitzgerald*, 216 F.R.D. at 639. This is correct: remember that in *Jaffee*,

the United States Supreme Court reasoned that "if the purpose of the privilege is to

be served, the participants in the confidential conversation 'must be able to predict

with some degree of certainty whether particular discussions will be protected. An

uncertain privilege, or one which purports to be certain but results in widely

varying applications by the courts, is little better than no privilege at all.'" 518

U.S. at 18 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393, 101 S. Ct. 677,

66 L. Ed. 2d 584 (1981)).

Others have criticized the middle ground approach as fundamentally unfair

because "[i]t depends on the individual judge's view of what is 'ordinary'" and is

thus subject to a judge's biases. Anderson, *supra*, at 119. Through this lens, the

approach is seen as "a kind of discrimination in itself that tells the plaintiff that

something is wrong with her if she claims to have suffered more than what is reasonable according to the dominant group." *Id.* at 141.

I agree with these criticisms. This approach is impossible to apply in a principled and consistent manner, provides little to no guidance to future courts, and undermines *Jaffee*'s directive that privileges be clear and predictable.

### D. I would adopt the narrow approach

As discussed in detail above, we have already rejected the broad approach, and I would reject the middle ground approach, too. This leaves the narrow approach.

To some extent, our court has already adopted what amounts to the narrow approach. In *McUne v. Fuqua*, McUne sued over injuries he suffered in an automobile accident. 42 Wn.2d 65, 68, 253 P.2d 632 (1953). The parties disputed whether McUne had impliedly waived the physician-patient privilege. *Id.* at 74. We explained, first, that "[w]hen a patient permits his physician to testify without objection, he of course waives the privilege as to that physician." *Id.* (citing *Williams v. Spokane Falls & N. Ry. Co.*, 42 Wash. 597, 84 P. 1129 (1906)). In that situation, the patient "also waives the privilege as to other physicians who attended the patient at the same time and in consultation with the first physician." *Id.*

We also held that at least in some circumstances, a patient may voluntarily open the door and waive "the privilege as to any medical testimony which tends to contradict or impeach medical testimony which he has himself offered." *Id.* at 76. We held that McUne voluntarily opened the door by having three doctors testify on his behalf and by personally testifying "that he was able to do heavy work before the accident but not afterwards, that his health was good prior to the accident, and that he had not consulted a doctor 'for years.'" *Id.* at 75-76. We subsequently limited this holding to some extent, clarifying that "we did not there adopt the minority rule that waiver, by permitting one treating physician to testify without objection, is a waiver as to all." *Phipps*, 74 Wn.2d at 448 n.9. We have also explained that a patient does not waive the privilege by testifying as an adverse witness, as that testimony does "not constitute a 'voluntary opening of the door.'" *Randa v. Bear*, 50 Wn.2d 415, 421, 312 P.2d 640 (1957) (quoting *Packard v. Coberly*, 147 Wash. 345, 265 P. 1082 (1928)).

So the holding of *McUne* can be summarized as follows. A patient waives the physician-patient privilege as to those physicians who testify on the patient's behalf, as well as to those physicians who attended the patient at the same time and in consultation with the testifying physician. And when a patient testifies about his or her condition as it existed in the past, prior to the incident at issue, the patient

waives the privilege as to those physicians who had treated the patient at that time. This holding, limiting waiver to the topics on which the party affirmatively offers evidence, contains the seeds of the narrow approach.

In accord with our case law, I would explicitly adopt the narrow approach now. I would hold that the Magneys have not impliedly waived privilege simply by seeking damages for mental anguish. As this case proceeds, it's possible that they may waive privilege at some point by, for example, affirmatively claiming no preexisting mental health issues or placing the substance of their communications with their marital counselor directly at issue, *see*, *e.g.*, *Koch*, 489 F.3d at 389-90. But they have not done so here. If the Magneys call their counselor as a witness, or if they testify to the substance of their counseling sessions, or if they otherwise rely on their prior treatment in making their case, then they will have waived privilege. *McUne*, 42 Wn.2d at 74. The Magneys might also waive privilege if they choose to rely on the status of their mental health prior to the events that led to this lawsuit. *McUne*, 42 Wn.2d at 75-76 (finding implied waiver in part because plaintiff voluntarily took the witness stand and claimed that "his health was good prior to the accident").

But all the Magneys have done at this stage is file a lawsuit in which they seek damages for mental anguish. Because I would adopt the narrow approach to

waiver, I would hold that this is insufficient to waive privilege. Thus, the

Magneys' marital counseling records are protected by privilege and not subject to

discovery, regardless of their relevancy. CR 26(b)(1).

The majority suggests that the Magneys may have impliedly waived

privilege through some action other than filing this lawsuit. Majority at 3

(reasoning that the trial court should determine "whether the Magneys have

impliedly waived privilege through any of their actions thus far"). According to

the majority, the Magneys may have "impliedly waived privilege by providing the

defendants with evidence of mental anguish akin to that which was discussed

during the marital counseling." *Id.* at 19-20. But that is a hypothetical situation

not before us. The respondents are arguing that the Magneys impliedly waived

privilege by filing this lawsuit. *See* Br. of Resp'ts at 2-3. For purposes of this

appeal, the only relevant action that the Magneys have taken is to file the lawsuit.

And the majority itself concludes that filing a lawsuit is *not* enough to waive

privilege. Majority at 18 ("we hold that the Magneys did not automatically waive

privilege by filing the lawsuit"). I agree, and the potential relevancy of the marital

counseling records does not change this.  There is no reason to remand this case for in camera review of those records.[7]

CONCLUSION

I would hold that the Magneys have not waived privilege, impliedly or otherwise, regardless of the relevancy of their martial counseling records.  I would therefore reverse the trial court's decision to order the Magneys to produce their marital counseling records.

Gordon McCloud, J.

González, J.

---

[7] The majority instructs the trial court "to determine whether evidence or disclosures that have been given to the defendants were discussed in the counseling." Majority at 20 n.9.  It bears noting that the Magneys met with their marital counselor *before* the events that gave rise to this lawsuit.  Verbatim Report of Proceedings at 3.