[Nos. 81478-3; 81480-5;     En Banc.]
81481-3; 81758-8;
81759-6.
Argued October 20, 2009.     Decided June 17, 2010.

HAJRUDIN KUSTURA ET AL., *Petitioners*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

ENVER MEŠTROVAC, *Petitioner*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES ET AL., *Respondents*.

IVAN FERENĆAK, *Petitioner*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES ET AL., *Respondents*.

EMIRA RESULOVIĆ, *Petitioner*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

FERID MAŠIĆ, *Petitioner*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

84

*Ann Pearl Owen* (of *Ann Pearl Owen PS*), for petitioners.

*Robert M. McKenna, Attorney General, Jay D. Geck, Deputy Solicitor General,* and *Masako Kanazawa, John R. Wasberg, Spencer W. Daniels,* and *Johnna S. Craig, Assistants,* for respondents.

*Kelly A. Owen, Katherine F. Laner,* and *Patrick M. Pleas* on behalf of Northwest Justice Project, amicus curiae.

*Christie L. Snyder, Nancy L. Talner,* and *Sarah A. Dunne* on behalf of ACLU of Washington Foundation, amicus curiae.

*Pamela Jo DeVet* and *Franklin D. Cordell* on behalf of ACLU of Washington Foundation and Washington State Court Interpreter and Translator Society, amici curiae.

*Bryan P. Harnetiaux, Michael J. Pontarolo,* and *Kelby D. Fletcher* on behalf of Washington State Association for

Justice Foundation and Washington State Trial Lawyers Association Foundation, amici curiae.

*Paula T. Olson* on behalf of Washington Self-Insurers Association, amicus curiae.

*George M. Ahrend* on behalf of Washington State Association for Justice Foundation, amicus curiae.

---

¶1 J.M. JOHNSON, J. — These cases require us to define the contours of government-paid interpreter services for limited English proficiency (LEP) individuals under chapter 2.43 RCW. Petitioners are all LEP individuals who filed workers' compensation claims with the Department of Labor and Industries (Department). The Department determined each worker's compensation benefit, and petitioners appealed those decisions to the Board of Industrial Insurance Appeals (Board). Petitioners proceeded through the appeals process, raising a variety of claims, including a claim for government-paid interpreter services for all interactions with the Department and the Board during the workers' compensation claims process. The first Court of Appeals decision to address this claim, *Kustura v. Dep't of Labor & Indus.*, 142 Wn. App. 655, 175 P.3d 1117 (2008), found no right to such expansive interpreter services under chapter 2.43 RCW. Relying on *Kustura*, the succeeding Court of Appeals decisions came to the same conclusion.

¶2 We hold that a nonindigent LEP individual's statutory right to government-paid interpreter services under chapter 2.43 RCW is triggered when a government agency initiates a legal proceeding involving the LEP individual. Here, neither the Department nor the Board initiated a legal proceeding, so the nonindigent petitioners had no statutory right to interpreter services. However, if the Board *in its discretion* appoints an interpreter to assist an LEP party at an appeal hearing, current regulations re-

quire the Board to pay for the interpreter's services, and chapter 2.43 RCW requires the Board to permit the interpreter to translate whenever necessary to assist the LEP individual at the hearing. This provision of interpreter services at a board hearing does not depend on indigency, nor does it extend beyond the hearing itself. We affirm the result of the Court of Appeals' decisions in *Kustura* and the subsequent cases on the scope of the statutory right to government-paid interpreter services.

Factual and Procedural History

¶3 These are civil cases, not criminal cases. Petitioners Hajrudin Kustura, Gordana Lukić, Maida Memiševič, Enver Meštrovac, Ivan Ferenćak, Emira Resulović, and Ferid Mašić are LEP individuals who speak Bosnian. Each was injured at his or her workplace, and each filed a claim with the Department seeking a workers' compensation award. The Department investigated to determine petitioners' workers' compensation benefits. During the course of the Department's actions, some petitioners received some department-paid interpreter services, but no petitioner received free services for all aspects of the Department's investigation. Petitioners appealed the Department's decisions to a board of industrial appeals judge (IAJ). The Department and the Board are separate governmental agencies. Petitioners were not found to be indigent, and all were represented by counsel during the workers' compensation claims process before the Department and the Board.

¶4 The IAJ held hearings on the record.[1] Interpreters were provided for the petitioners at these hearings, but interpreter services were not provided by the IAJ for petitioners' communications with counsel and in one case were not provided for some witness testimony. In each case, IAJ decisions were appealed to the full Board, then to the superior court and, in turn, to the Court of Appeals. The first

---

[1] These hearings were the only hearings held at the administrative level.

and lead decision published by the Court of Appeals was *Kustura*, 142 Wn. App. 655, 175 P.3d 1117.[2] *Kustura* held that chapter 2.43 RCW did not provide petitioners a statutory right to interpreter services paid for by the government because petitioners were the "initiating" parties of the administrative proceedings and department workers' compensation determinations are not "legal proceeding[s]" within the meaning of RCW 2.43.020(3). *Id.* at 680.

¶5 The *Kustura* decision also held that if the Board, in its discretion, appoints an interpreter at appeal hearings, WAC 263-12-097 and chapter 2.43 RCW require the Board to permit the interpreter to assist throughout the hearing, including translating witness testimony and assisting communication between the LEP individual and his or her attorney. *Id.* at 681. The Court of Appeals decisions in the other cases followed *Kustura*'s analysis and conclusions regarding the proper scope of interpreter services. *Meštrovac v. Dep't of Labor & Indus.*, 142 Wn. App. 693, 176 P.3d 536 (2008); *Ferenćak v. Dep't of Labor & Indus.*, 142 Wn. App. 713, 175 P.3d 1109 (2008); *Resulović v. Dep't of Labor & Indus.*, noted at 144 Wn. App. 1005 (2008); *Mašić v. Dep't of Labor & Indus.*, noted at 144 Wn. App. 1008 (2008).[3]

¶6 We consolidated petitioners' cases and granted review limited to the question of the scope of the right to government-provided interpreter services at the department and board levels. *Kustura v. Dep't of Labor & Indus.*, 165 Wn.2d 1001, 198 P.3d 511 (2008). This issue is governed by chapter 2.43 RCW and WAC 263-12-097.

ANALYSIS

¶7 Statutory interpretations are questions of law reviewed de novo. *State v. Armendariz*, 160 Wn.2d 106, 110,

---

[2] The Court of Appeals in *Kustura* consolidated claims raised by Hajrudin Kustura, Gordana Lukić, and Maida Memišević.

[3] *Resulović* and *Mašić* are unpublished opinions governed by RCW 2.06.040.

156 P.3d 201 (2007). We note at the outset that the legislature has codified a policy broadly securing the rights of LEP individuals who need interpreter services during legal proceedings. *See* RCW 2.43.010. However, the legislature has also provided specific statutory guidance to define the contours of the rights to government paid services. This specific guidance is directly applicable to the current controversy. "A specific statute will supersede a general one when both apply." *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 630, 869 P.2d 1034 (1994) (citing *Gen. Tel. Co. of Nw., Inc. v. Utils. & Transp. Comm'n*, 104 Wn.2d 460, 464, 706 P.2d 625 (1985)). We therefore begin our analysis with the applicable specific statutory provisions. To do otherwise would be to pretend to respect the legislature's intent while ignoring the clearest indication of that intent as codified by the legislature.

### 1. Statutory Right to Government-Paid Interpreter Services

■ ¶8 RCW 2.43.040 is clear that LEP individuals have a statutory right to government-paid interpreter services only when they are involved in a legal proceeding initiated by the State:

> (2) In all *legal proceedings* in which the non-English-speaking person is a party . . . , the cost of providing the interpreter shall be borne by the governmental body *initiating* the legal proceedings.

> (3) In other legal proceedings, the cost of providing the interpreter *shall be borne by the non-English-speaking person* unless such person is indigent according to adopted standards of the body.

RCW 2.43.040 (emphasis added). Subsection (2) allocates the cost of interpreter services to the government if the government entity *initiates* an action that is properly characterized as a *legal proceeding*, a term defined by RCW 2.43.020(3). (*See infra* note 7.) Thus, for an LEP individual to have a statutory right to interpreter services at government expense, the government action must (1) be initiated

by the government entity and (2) satisfy the definition of a "legal proceeding."[4] If the government action is not a legal proceeding or if a legal proceeding is initiated by an LEP, the LEP bears the cost of interpreter services. RCW 2.43.040(3).[5]

a. *Initiation of proceedings*

¶9 Petitioners do not meet the statutory requirements to be entitled to government-paid interpreter services under RCW 2.43.040 because petitioners initiated the claims to both the Department and the Board. When a worker is injured on the job, the statutorily required course of action is for the worker to report the accident to the worker's employer, who in turn is required to report the accident to the Department. RCW 51.28.010(1). However, the legislature has recognized that injured workers generally report their injuries to physicians, who then report to the Department. RCW 51.28.015(1)(a). "Upon receipt of such notice of accident, the [D]epartment shall immediately forward to the worker or his or her beneficiaries or dependents notification, in nontechnical language, of their rights" regarding compensation. RCW 51.28.010(2). The worker may seek workers' compensation benefits by filing a claim with the Department within one year from the date of the accident. RCW 51.28.020, .050. If a worker disagrees with the Department's workers' compensation decision, the worker may appeal to the Board. RCW 51.52.050, .060.

¶10 Petitioners argue that the Department initiates the workers' compensation decision process by sending information to injured workers and that the Department's action initiates the Board's appeal hearings. These arguments are not an accurate description of the statutory claim and

---

[4] It is undisputed that an LEP individual falls within the scope of a "non-English-speaking person" within the meaning of chapter 2.43 RCW.

[5] Indigent status may require different analysis under the express provision of RCW 2.43.040(3). Because none of the petitioners were found in any of the proceedings below to be indigent, we do not discuss the impact of indigent status upon LEP individuals' rights under chapter 2.43 RCW at this time.

appeal processes.[6] If a worker is injured on the job, the worker is statutorily required to make a report, which is transmitted to the Department. Upon receipt of a report, the Department is statutorily required to send the worker information regarding the worker's rights. These informational disclosures trigger no administrative proceeding and are always preceded and induced by a petitioner's report of an injury. Aside from the worker's accident report triggering the Department's disclosure, neither of these actions has any further legal ramifications for the Department or the claimants. The act that actually triggers and thus initiates the Department's workers' compensation decision process is the worker's act of filing a claim with the Department. As the workers/petitioners were the parties who triggered the Department's decision-making process, the Department did not initiate the administrative proceedings involving the petitioners.

¶11 Petitioners additionally argue that, upon receiving a report of a workplace injury, the Department conducts an investigation under RCW 51.04.020(6), which requires the investigation of "serious injuries" at the workplace. This argument also fails. There is no indication that any investigations were made until after petitioners filed their claims. Additionally, if such an investigation occurred before a claim was filed, it would not trigger the Department's administrative action; petitioners would still be required to file a claim under RCW 51.28.020 to initiate the claims process. In any event, we decline to read facts into the record merely because they could have occurred, especially where petitioners have had ample opportunity to build the record. Here, the claims process did not and could not begin until the petitioners filed their claims. Only once a claim is filed does the claims process officially begin. Thus, petitioners' claim filings initiated the processes.

---

[6] As the Department and the Board are separate administrative bodies involved in different functions, it is highly questionable whether the actions of one can initiate a proceeding on behalf of the other. However, because the Department did not initiate any proceedings here, we need not reach this question in this case.

¶12 Petitioners make no additional arguments that the Board is the initiating party of the Board's appeal hearings. In these cases, petitioners appealed the Department's decisions to the Board, and the Board took no action until moved by the petitioners. Thus, the Board did not initiate the appeal hearings.

¶13 Petitioners were denied no statutory right to government-paid interpreter services because neither the Department nor the Board initiated any proceedings involving the petitioners as required by RCW 2.43.040.

b. *Legal Proceeding*

¶14 Because of the preceding analysis, it is unnecessary for this court to determine whether the Department's actions were legal proceedings within the statutory definition provided in RCW 2.43.020(3).[7] However, we note that the right under RCW 2.43.040 for LEP individuals to receive government-paid interpreter services requires both (1) that the government entity initiate the action and (2) that the action satisfy the statutory definition of a "legal proceeding." If either of these conditions is not satisfied, then a nonindigent LEP individual is responsible for interpreter costs in administrative proceedings under chapter 2.43 RCW.

¶15 As RCW 2.43.040 specifically addresses and definitively establishes that petitioners are not statutorily entitled to government-paid interpreter services at the department or board level, we do not analyze the issue under the general policy provisions of RCW 2.43.010.

2. Conditional Right to Government-Paid Interpreter Services

¶16 Though petitioners have no statutory right to government-paid interpreter services at either the depart-

---

[7] RCW 2.43.020(3) states that a " '[l]egal proceeding' means a proceeding in any court in this state, grand jury hearing, or hearing before an inquiry judge, or before an administrative board, commission, agency, or licensing body of the state or any political subdivision thereof." It is undisputed that the Board's hearings were legal proceedings.

ment or board level, petitioners *do* have a right to paid interpreter services throughout a hearing if the Board *in its discretion* appoints an interpreter at the Board's hearings. This right comes from the interplay between RCW 2.43-.030(1) and WAC 263-12-097.

¶17 RCW 2.43.030(1) defines the scope of the right to an appointed interpreter's services in a legal proceeding:

> Whenever an interpreter is appointed to assist a non-English-speaking person in a legal proceeding, the appointing authority *shall*, in the absence of a written waiver by the person, appoint a certified or a qualified interpreter to assist the person *throughout the proceedings*.

(Emphasis added.) If the Board appoints an interpreter to assist an LEP individual in a legal proceeding, including board hearings, the Board "shall" appoint the interpreter to assist the LEP "throughout the proceedings." Here, the Board, in its discretion, decided to appoint interpreters to assist petitioners at their hearings. However, the IAJ forbade interpreter services for some attorney-client communication and, in one case, barred translation of witness testimony other than that of the petitioner. Communicating with counsel and understanding testimony offered during a hearing are both legitimate aspects of a legal proceeding, and the mandatory language of RCW 2.43.030(1) does not permit the Board to appoint an interpreter and then restrict the scope of the interpreter's services during a hearing. *If* the Board appoints an interpreter at appeals hearings, chapter 2.43 RCW requires the Board to allow interpreter services for all aspects of the hearing, including translating attorney-client communications and testimony of all witnesses.[8]

¶18 The Board has discretion to appoint and pay for an interpreter at a Board hearing even if not statutorily

---

[8] The Board initially maintained that the IAJ could restrict interpreter assistance from some aspects of the hearing. *See Kustura*, 142 Wn. App. at 681. However, respondents represented at oral argument that the Board's position changed after the *Kustura* decision's holding to the contrary. *See also* Answer of Resp't Bd. of Indus. Ins. Appeals to Pet. [Ferenćak] Am. Pet. for Review at 12-13.

required to do so. WAC 263-12-097, provided below in pertinent part, provides the contours of this discretion:

> (1) When . . . a non-English-speaking person as defined in chapter 2.43 RCW is a party or witness in a hearing before the board of industrial insurance appeals, the industrial appeals judge *may* appoint an interpreter to assist the party or witness throughout the proceeding.
>
> . . . .
>
> (4) The board of industrial insurance appeals *will* pay interpreter fees and expenses when the industrial appeals judge has determined the need for interpretive services as set forth in subsection (1).

WAC 263-12-097 (emphasis added). Subsection (1)'s permissive language gives the Board discretion to appoint an interpreter for a party or witness, regardless of whether the "initiating the legal proceedings" requirement of RCW 2.43.040(2) is satisfied. However, this discretion does not extend to the scope of services the interpreter may provide, which, as stated above, is governed by RCW 2.43.030(1). The mandatory language in WAC 263-12-097(4) requires the Board to pay for interpreter services if the Board elects to appoint an interpreter. Read with RCW 2.43.030(1), the rule that arises is *if* the Board decides to appoint an interpreter, the Board *shall* pay for the associated interpreter costs and must allow the interpreter to translate "whenever necessary to assist the claimant during the hearing."[9] *Kustura*, 142 Wn. App. at 681. However, this right is limited to the hearing itself. Nothing in chapter 2.43 RCW or WAC 263-12-097 requires paid interpreter services outside of the actual board hearing. Our holding is thus limited to the hearing itself and does not extend to any

---

[9] We note that the right to government-paid interpreter services in this context is based on a regulation, not on chapter 2.43 RCW. If the regulation is changed, then the right to government-provided interpreter services at legal proceedings not initiated by the government may be impacted.

hearing preparation, including interviews, medical evaluations, and preparing for or responding to discovery.[10]

CONCLUSION

¶19 The petitioners as claimants initiated interactions with both the Department and the Board. As petitioners were not indigent, they therefore had no statutory right to interpreter services at government expense under chapter 2.43 RCW.

¶20 However, the Board has discretion to appoint interpreters for LEP individuals. If the Board exercises its discretion and appoints interpreters, RCW 2.43.030(1) requires the Board to allow the interpreter to provide services throughout the proceeding, including attorney-client communications, but this requirement does not extend beyond the hearing itself. Finally, WAC 263-12-097 requires the Board to pay for any interpreter services it provides. We affirm the result of the Court of Appeals decisions on the issue of government-provided interpreter services.

MADSEN, C.J.; C. JOHNSON, ALEXANDER, OWENS, and FAIRHURST, JJ.; and QUINN-BRINTNALL, J. PRO TEM., concur.

¶21 CHAMBERS, J. (dissenting) — The court's opinion today misreads carefully crafted statutes so as to deny non-English speaking workers in our state a significant benefit the legislature intended to provide: the ability to meaningfully participate in the workers' compensation process with the assistance of translators. I respectfully dissent.

¶22 I would start our analysis with the legislature's own statement of purpose:

It is hereby declared to be the policy of this state to secure the rights, constitutional or otherwise, of persons who, because of a non-English-speaking cultural background, are unable to readily understand or communicate in the English language, and

[10] The Court of Appeals arrived at the same holding solely on the grounds of WAC 263-12-097(1). *Kustura*, 142 Wn. App. at 681. Although this subsection does include the phrase "throughout the proceeding," the discretionary "may" in the statute suggests that other readings are possible. We decide this case based on the clearer, mandatory language of RCW 2.43.030(1). We do not address the Court of Appeals' interpretation of WAC 263-12-097.

who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them.

RCW 2.43.010. This is expansive language and should guide our reading of related statutes. Similarly, it has long been the law of the State that the workers' compensation statute is to be interpreted liberally in favor of the injured worker:

> This court is committed to the doctrine that our workmen's compensation act [(Laws of 1927, ch. 310)] should be liberally construed in favor of its beneficiaries. It is a humane law and founded on sound public policy, and is the result of thoughtful, painstaking and humane considerations, and its beneficent provisions should not be limited or curtailed by a narrow construction.

*Hilding v. Dep't of Labor & Indus.*, 162 Wash. 168, 175, 298 P. 321 (1931); *accord Lightle v. Dep't of Labor & Indus.*, 68 Wn.2d 507, 510, 413 P.2d 814 (1966) ("We are committed to the rule that the Industrial Insurance Act [(Title 51 RCW)] is remedial in nature and its beneficial purposes should be liberally construed in favor of beneficiaries." (citing *Wilber v. Dep't of Labor & Indus.*, 61 Wn.2d 439, 446, 378 P.2d 684 (1963))). In my view, the same principle should apply to statutes that are necessary for the implementation of the act, such as chapter 2.43 RCW.

¶23 Turning to that chapter, "Except as otherwise provided in this section, when a non-English-speaking person is involved in a legal proceeding, the appointing authority shall appoint a qualified interpreter." RCW 2.43.030(1)(c). " 'Legal proceeding' means a proceeding in any court in this state, grand jury hearing, or hearing before an inquiry judge, or before an administrative board, commission, agency, or licensing body of the state or any political subdivision thereof." RCW 2.43.020(3). Finally, relevantly, "In all legal proceedings in which the non-English-speaking person is a party . . . , the cost of providing the interpreter shall be borne by the governmental body initiating the legal proceedings." RCW 2.43.040(2). Thus, if workers' compensation proceedings are proceedings initiated by the State or any political subdivision thereof, non-English-speaking claimants are entitled to interpreters.

¶24 Read liberally, as we must, the department initiates the proceedings. RCW 51.28.010(1) obligates employers, not employees, to notify the department if an employee has been injured and has received medical treatment. At that point, the department initiates proceedings. RCW 51.28-.010(2) ("Upon receipt of such notice of accident, the department shall immediately forward to the worker . . . notification, in nontechnical language, of their rights under this title."). RCW 2.43.040(2)'s requirement that a government agency initiate proceedings is satisfied.

¶25 Next, a workers' compensation action is a legal proceeding. The statute defines " '[l]egal proceeding' " liberally to include "a proceeding . . . before an administrative board [or] agency." RCW 2.43.020(3). These claimants appeared before an administrative board in a proceeding initiated by the State. They appeared in a legal proceeding.

¶26 The claimants were entitled to workers' compensation. Their English was limited. They should have been provided interpreters to secure their rights.

¶27 I respectfully dissent.

SANDERS, J., concurs with CHAMBERS, J.