**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

APRIL 30, 2026

*Stgne, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 30, 2026

*Sarah Pendleton*

SARAH R. PENDLETON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| J.M.I., | No. 104167-5 |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON, | En Banc |
| Petitioner. | |
| | Filed: <u>April 30, 2026</u> |
| S.P., a minor, by BRUCE A. WOLF, her guardian ad litem, | |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON, | |
| Petitioner. | |
| TACI MARSON, by and through Northstar Case Management, her Guardian and Conservator, | |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL & HEALTH SERVICES, DEPARTMENT OF CHILDREN, YOUTH & FAMILIES, | |
| Petitioner. | |

DAREL MAXFIELD, as guardian for
F.H., a minor; N.H., individually,

    Respondents,

v.

STATE OF WASHINGTON,
DEPARTMENT of SOCIAL and
HEALTH SERVICES; DEPARTMENT
of CHILDREN, YOUTH, & FAMILIES;
DEPARTMENT OF CHILD
PROTECTIVE SERVICES, governmental
entities; and DOES 1-5, individuals or
entities,

    Petitioner.

  MUNGIA, J.—The State is required to protect and promote the welfare of foster

children and investigate complaints of abuse.  Ch. 74.13 RCW.  The plaintiffs[1] allege that

the State failed to carry out its duty and, as a result, each of them was sexually or

physically abused.

  The plaintiffs have filed lawsuits against the State.  In each lawsuit, the plaintiffs

seek discovery from the State that not only includes their case files but also other

documents relevant to proving that the State breached the duty it owed to each of them.

  The State does not dispute that under CR 26, the plaintiffs would be entitled to

these documents.  Indeed, up until these cases, the State complied with these types of

---

[1] We use the term plaintiffs throughout this opinion to refer collectively to J.M.I., S.P., Taci
Marson, F.H., and N.H., the respondents in this action.

discovery requests so long as protective orders limiting their use were in place. However, the State now takes the position that these documents are protected by a statutory privilege and are not discoverable. The trial courts, in these consolidated cases for appeal, ruled in the plaintiffs' favor, ordering the State to produce the requested records. The State sought direct review in this court, which was granted.

We hold that the types of documents plaintiffs are seeking here are privileged under RCW 74.04.060(1)(a). However, we further hold that RCW 74.04.060(1)'s statutory exception applies in these cases, allowing the plaintiffs to obtain the requested discovery. We also hold that RCW 13.50.100's confidentiality and nondisclosure requirements do not prevent the disclosure of the requested documents.[2]

Accordingly, we affirm the trial courts' orders compelling the State to comply with the plaintiffs' discovery requests.

## I
### FORMER FOSTER CHILDREN BROUGHT NEGLIGENCE SUITS AGAINST THE STATE FOR FAILING TO PROTECT THEM FROM ABUSE IN FOSTER CARE. THEY SOUGHT CHILD WELFARE RECORDS TO SUPPORT THEIR CLAIMS, AND THE TRIAL COURTS ORDERED THE RECORDS PRODUCED

J.M.I., S.P., Taci Marson, F.H., and N.H. are former foster children who each sued the State, alleging that the State negligently placed them in foster homes where they were abused and that it failed to adequately investigate reports of abuse. In their lawsuits, the

---

[2] Because we find that the statutory privilege does not apply and that the plaintiffs are entitled to discover the information under RCW 13.50.100, we do not address the plaintiffs' other arguments involving estoppel and constitutional claims.

plaintiffs propounded discovery to the State, seeking Department of Children, Youth, and Families (DCYF) records that sought the following categories of information:

- Information the State used to remove the children from their biological parents;

- Information the State used to vet and license the foster homes; and

- Reports of abuse the State received about those foster homes.

They requested the following records:

- Their own child welfare records;

- Records relating to biological family members;

- Records relating to any allegations received or investigations conducted by the State regarding their foster parents and the children in their care;

- Records relating to their foster parents, from the time they were licensed to the present;

- The identity of and records for every dependent child ever placed in the care of the same foster parents; and

- Investigation files concerning other state-licensed foster homes controlled by the State.

In prior lawsuits, when similarly situated plaintiffs propounded similar discovery to the State, the State agreed that the information was discoverable and produced the requested records subject to a protective order. The State has now changed its position. The State asserts that the requested information is privileged and thus not subject to discovery. The State moved for protective orders asserting that RCW 74.04.060(1)(a) and

4

RCW 13.50.100 barred it from producing nonparty child welfare records. The trial courts

denied the State's motions, finding the statutes did not prevent the production of the records.

The trial courts ordered production of the requested records, requiring redaction of

employee personnel information, Social Security numbers, financial information, health

care information, and attorney-client and work product privileged documents.

The courts also limited how the plaintiffs could use the information. The courts

ordered that the parties could not use the records for any purpose other than the present

litigation, prohibiting their dissemination beyond what was reasonably needed for the case.

In J.M.I.'s and S.P.'s cases, the trial courts ordered that any copies or summaries of the

documents must be returned to counsel at the conclusion of the proceedings. The courts

required a party that filed, discussed, or referenced confidential material to consider filing a

motion to seal or redact pursuant to GR 15. The orders specified that the court would hold a

hearing outside the presence of the jury to determine the admissibility of the confidential

evidence prior to introducing or otherwise disclosing the existence of such evidence at trial.

The State sought discretionary review of the discovery orders. This court granted

review of the cases of J.M.I., S.P., Marson, and Maxfield, consolidated the cases,[3] and

stayed the orders to compel pending our review.[4] This court stayed several other similar

cases pending this decision.[5]

---

[3] *See* Am. Comm'r's Ruling Granting Mot. to Transfer (Wash. July 30, 2025).
[4] Notation ruling, *Marson v. Dep't of Soc. & Health Servs.*, No. 60059-5-II (Wash. Ct. App. Oct. 15, 2024); Notation ruling, *Maxfield v. Dep't of Soc. & Health Servs.*, No. 60162-1-II (Wash. Ct. App. Nov. 19, 2024).
[5] Am. Comm'r's Ruling, *supra*.

## II
### RCW 74.04.060(1)(a)'S PRIVILEGE PROTECTS CHILD WELFARE RECORDS IN DCYF'S POSSESSION

We review a trial court's discovery rulings under an abuse of discretion standard. *Magney v. Truc Pham*, 195 Wn.2d 795, 801, 466 P.3d 1077 (2020).  However, we review a trial court's interpretation of the law de novo.  *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).  Because we are reviewing the trial court's interpretation of the privilege and confidentiality statutes, our review is de novo.

CR 26(b)(1) allows parties to obtain discovery regarding any nonprivileged matter that is relevant to the lawsuit.  The question here is whether RCW 74.04.060(1)(a) provides a privilege that prevents the State from producing the requested materials. Because privileges impede the truth-finding process, we strictly and narrowly construe them to exclude the least amount of relevant evidence.  *State v. Burden*, 120 Wn.2d 371, 376, 841 P.2d 758 (1992); *see, e.g.*, *Lowy v. PeaceHealth*, 174 Wn.2d 769, 777-78, 280 P.3d 1078 (2012).

In construing RCW 74.04.060(1)(a), we interpret the statute to ascertain and carry out the legislature's intent, giving effect to plain meaning.  *Campbell & Gwinn*, 146 Wn.2d at 9-10.  To discern a statute's meaning, we first look to its plain text.  *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002).  Legislative definitions in the statute are controlling.  *Id.*  In the absence of a definition, we look to the dictionary for a term's ordinary meaning.  *Id.*  We may also discern legislative intent by looking at the context of the statute, related provisions, and the entire statutory scheme.  *Id.*  If the meaning of the

statute is plain on its face, the inquiry ends there. *Id.* If the statute remains susceptible to more than one reasonable interpretation, it is ambiguous. *Id.* at 955. However, a statute is not ambiguous merely because different interpretations are conceivable. *Id.*

RCW 74.04.060(1)(a) provides:

> For the protection of applicants and recipients, the department, the authority, and the county offices and their respective officers and employees are prohibited, except as hereinafter provided, from disclosing the contents of any records, files, papers and communications, except for purposes directly connected with the administration of the programs of this title. In any judicial proceeding, except such proceeding as is directly concerned with the administration of these programs, such records, files, papers and communications, and their contents, shall be deemed privileged communications and except for the right of any individual to inquire of the office whether a named individual is a recipient of welfare assistance and such person shall be entitled to an affirmative or negative answer.

The plaintiffs argue that this privilege provision does not apply to child welfare records in DCYF's possession. The plaintiffs assert that the statute is intended to protect recipients of "traditional welfare services like medical services, assistance grants, work relief and the like," not recipients of child welfare services. Br. of Resp'ts J.M.I./S.P. (J.M.I.) at 52. In addition, the plaintiffs argue that "department" strictly refers to the Department of Social and Health Services (DSHS), not DCYF, and therefore only DSHS records are discoverable. We disagree.

1. *Foster Children and Families Are Recipients of Assistance Protected by the Privilege Statute, RCW 74.04.060(1)(a)*

The privilege in RCW 74.04.060(1)(a) is for the protection of "applicants and recipients." Based on the definitions in the statutory scheme, foster children and their families are "recipients" of assistance covered by the statute.

The chapter defines "recipient" as "any person receiving assistance and in addition those dependents whose needs are included in the recipient's assistance." RCW 74.04.005(12). "Assistance" is defined as "public aid to persons in need thereof for any cause, including services." RCW 74.04.005(11). Assistance specifically encompasses "[c]hild welfare services." RCW 74.04.050(1)(b). *See also* RCW 74.13.020(5) ("[c]hild welfare services" include "voluntary and in-home services, out-of-home care, case management, and adoption services").

Here, foster children and their families received child welfare services from the State that included foster care placement and caretaking functions. *See, e.g.*, RCW 74.13.010, .020(5); WAC 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. As such, they were the recipients of state assistance and are protected by the privilege in RCW 74.04.060(1)(a).

2. *"The Department" Includes DCYF*

RCW 74.04.060(1)(a) prohibits "the department . . . from disclosing the contents of any records, files, papers and communications." The plaintiffs contend RCW 74.04.060(1)(a) applies to records maintained by DSHS, not the records maintained by DCYF. We disagree.

The plaintiffs are correct that "department" under Title 74 RCW "means the department of social and health services." RCW 74.04.005(5). However, that definition applies "unless the context indicates otherwise." RCW 74.04.005. Here, the context indicates that records in the custody of "the department" are not limited to records maintained by DSHS but also include those maintained by DCYF in providing child welfare services.

When the legislature created DCYF in 2017, it provided that all references to DSHS in the RCW shall be construed to mean DCYF "when referring to the functions transferred in this section." RCW 43.216.906(1), .907(1). The powers, duties, and functions transferred from DSHS to DCYF include child welfare services, adoption support, children and family services, family preservation services, and care of children. *See id.*; chs. 74.13-74.15 RCW. Importantly, the legislature transferred "[a]ll reports, documents, surveys, books, records, files, papers, or written material in the possession of [DSHS] pertaining to the powers, duties, and functions" to DCYF. RCW 43.216.906(2)(a), .907(2)(a). Accordingly, in construing RCW 74.04.005, the "department" encompasses DCYF.

Thus, RCW 74.04.060(1)(a)'s privilege applies to DCYF records of foster children and their families. The next question is whether the exception allowing the production of documents applies here.

### III
### RCW 74.04.060(1)(a)'S PRIVILEGE AGAINST DISCLOSURE HAS AN EXCEPTION: RECORDS THAT ARE NEEDED IN A JUDICIAL PROCEEDING DIRECTLY CONCERNING THE ADMINISTRATION OF THE STATE PROGRAM ARE DISCOVERABLE

RCW 74.04.060(1)(a) contains an exception to its nondisclosure rule: documents may be produced if they are needed in a judicial proceeding directly concerned with the administration of the state program.

We hold that under RCW 74.04.060(1)(a), the requested documents fall within the exception. Judicial proceedings involving allegations that the State negligently failed to fulfill its duties to a foster child are proceedings directly concerned with the State's administration of its foster care program. Therefore, the exception to the privilege applies.

The State contends that these records do not go directly to the administration of the State's foster care program. We disagree.

Whether the State negligently failed to protect a foster child from foreseeable harm in their foster care placements directly concerns the administration of the State's program. The State is required to "develop, administer, supervise, and monitor a coordinated and comprehensive plan that establishes, aids, and strengthens services for the protection and care of runaway, dependent, or neglected children." RCW 74.13.031(1). As part of coordinating its child welfare services, the State is charged with the following:

- Recruiting prospective foster homes;

10

- Investigating complaints of caretakers causing a child serious physical or emotional harm, sexual abuse or exploitation, or imminent risk of serious harm, and responding with appropriate services, reporting, or moving the child;

- Monitoring the placement of children in foster care to assure their safety, well-being, and quality of care.

*See* RCW 74.13.031(2), (3), (8).

These are just a few of the State's responsibilities in administering its child welfare program for foster children.

The State's goal in administering the foster care program is to provide safe environments for foster children, free from abuse and exploitation. These lawsuits go directly to the State's administration, or more precisely, alleged negligent administration, of the program. The records the plaintiffs are seeking go directly to their allegations of mismanagement of the foster care program. As such, the discovery requests fall within the statute's exception, allowing disclosure.

IV

RCW 13.50.100 ALLOWS THE PLAINTIFFS TO OBTAIN THEIR REQUESTED DISCOVERY

Having determined the privilege in RCW 74.04.060(1)(a) does not prevent the State from producing the requested discovery, we next address whether the plaintiffs are entitled to the requested discovery under RCW 13.50.100.

11

The plaintiffs and the State agree that RCW 13.50.100 allows the State to disclose records that "pertain" to the plaintiffs. They disagree, however, on what the term "pertain" means.

RCW 13.50.100 provides that records retained or produced by any juvenile care agency shall be confidential and released only in limited circumstances. RCW 13.50.100(2), (3). One circumstance is that a juvenile, their parents, their attorney, or their parents' attorney "shall, upon request, be given access to all records and information collected or retained by a juvenile justice or care agency which pertain to the juvenile." RCW 13.50.100(7). The statute does not limit the juvenile to obtaining only their own file. Nor does the statute limit the juvenile to obtaining only information that refers to them. Instead, the juvenile is entitled to the information that "pertain[s]" to them.

The information the plaintiffs seek pertains to them because it directly relates to and concerns them. The State had the duty to ensure the plaintiffs' well-being and safety. The information they seek goes directly to the issue of whether the State breached that duty. Thus, the information pertains to the plaintiffs, and RCW 13.50.100 does not bar the State from producing it.[6]

---

[6] Although RCW 13.50.100 does not bar the production of the nonparty child welfare records here, the statute still requires that child welfare records are treated with strict confidentiality to prevent against unauthorized disclosure. RCW 13.50.100(2), (5). This is in line with federal law conditioning the receipt of federal funds for state child abuse and neglect and foster care programs on states safeguarding the privacy of affected children. 42 U.S.C. §§ 5106a(b)(2)(B)(viii)(I)-(VI), 671(a)(8).

## V

### THE PLAINTIFFS ARE NOT ENTITLED TO ATTORNEY FEES

The plaintiffs request an award of attorney fees and costs under RCW 13.50.100(10) if they prevail in this appeal. We hold that the statute does not allow them to recover their attorney fees and costs.

RCW 13.50.100(10) provides:

> Subject to the rules of discovery in civil cases, any party to a proceeding seeking a declaration of dependency or a termination of the parent-child relationship and any party's counsel and the guardian ad litem of any party, shall have access to the records of any natural or adoptive child of the parent, subject to the limitations in subsection (7) of this section. A party denied access to records may request judicial review of the denial. If the party prevails, he or she shall be awarded attorneys' fees, costs, and an amount not less than five dollars and not more than one hundred dollars for each day the records were wrongfully denied.

The statute allows the recovery of attorney fees and costs only for parties involved in a dependency or termination proceeding. This is not a dependency or termination proceeding. Accordingly, the plaintiffs are not entitled to an award of fees and costs under RCW 13.50.100(10).

The plaintiffs also make a general request under RAP 18.1 for an award of attorney fees and costs. The only basis that the plaintiffs have made for such a request is RCW 13.50.100(10). That statute does not entitle them to fees and costs. Accordingly, we deny their request for an award of fees and costs incurred in this appeal.

13

VI

CONCLUSION

Our civil rules allow parties to discover admissible evidence and information likely to lead to the discovery of admissible evidence, unless the information is privileged. Because privileges impede the truth-finding function of trials, we narrowly construe them.

Here, the State claims that RCW 74.04.060(1)(a) creates a privilege that precludes it from producing the information sought by the plaintiffs. We disagree.

We hold that while the information requested by the plaintiffs is privileged under RCW 74.04.060(1)(a), an exception applies here: the information is discoverable because the plaintiffs' lawsuits go directly to the administration of the State's foster care program. We also hold that RCW 13.50.100 does not bar the plaintiffs' discovery request. The plaintiffs are not entitled to an award of attorney fees and costs on appeal.

We affirm the trial courts' orders and remand for further proceedings.

_____
Mungia, J.

WE CONCUR:

_____
Johnson, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.

_____
Madsen, J.P.T.

_____
Yu, J.P.T.

No. 104167-5

STEPHENS, C.J. (concurring)—I agree with the majority that the confidentiality statute, RCW 13.50.100, permits the disclosure of the documents at issue in these cases, and I join in affirming the trial courts' orders compelling discovery. I write separately because, in light of the legislature's enactment of RCW 13.50.100, the privilege under RCW 74.04.060(1)(a) should not be read as applying to child welfare records held by the Department of Children, Youth, and Families (DCYF). The majority holds that the privilege contained in RCW 74.04.060(1)(a) applies to child welfare records held by DCYF, but finds that the records in these cases are exempt because they are being sought in a proceeding "directly concerned with the administration of these programs." RCW 74.04.060(1)(a). While I agree with the majority that *if the privilege applies*, this exception clearly permits disclosure when a cause of action involves "allegations that the State negligently failed to fulfill its duties to a foster child," I disagree with the premise. Majority at 10. I therefore respectfully concur.

1

RCW 74.04.060(1)(a) is a general privilege statute. It should not apply to child welfare records in the custody of DCYF because it was superseded by RCW 13.50.100, a later-enacted statute that specifically addresses juvenile records. RCW 74.04.060(1)(a) provides:

> For the protection of applicants and recipients, the department . . . [is] prohibited, except as hereinafter provided, from disclosing the contents of any records, files, papers and communications . . . . In any judicial proceeding, except such proceeding as is directly concerned with the administration of these programs, such records, files, papers and communications, and their contents, shall be deemed privileged communications.

Under the statute's plain language, "department" is the Department of Social and Health Services (DSHS). However, the majority holds that the privilege extends to child welfare records held by DCYF because foster children and families are "recipients" of state assistance and when the legislature transferred "'[a]ll reports, documents, surveys, books, records, files, papers, or written material in the possession of [DSHS]' . . . to DCYF,'" it also transferred the protection provided by this general privilege. Majority at 9 (first and second alterations in original) (quoting RCW 43.216.906(2)(a), .907(2)(a)). I cannot join this reasoning because we must narrowly construe a statutory privilege that derogates from the common law and moreover, the majority's interpretation does not comport with our long-standing approach to general and specific statutes.

2

Statutory privileges stand in derogation of the common law, and we have repeatedly held that they must be "construed strictly." *Dep't of Soc. & Health Servs. v. Latta*, 92 Wn.2d 812, 819, 601 P.2d 520 (1979); *Magney v. Truc Pham*, 195 Wn.2d 795, 802, 466 P.3d 1077 (2020) ("when a privilege is created by statute and thus is not a privilege found within the common law, it is considered to be in derogation of—that is, an exemption from—the common law, and the statute must be strictly construed"). We have also consistently applied a specific statute over a general one when applying both would produce an incongruent or absurd result. *Kustura v. Dep't of Labor & Indus.*, 169 Wn.2d 81, 88, 233 P.3d 853 (2010); *Wash. Conserv. Action Educ. Fund v. Hobbs*, 3 Wn.3d 768, 771, 557 P.3d 669 (2024) ("where overlapping statutes conflict, '[a] general statutory provision must yield to a more specific statutory provision'" (alteration in original) (internal quotation marks omitted) (quoting *Wash. State Ass'n of Counties v. State*, 199 Wn.2d 1, 13, 502 P.3d 825 (2022))). However, a more specific statute does not broadly invalidate a general statute, but rather, "'the [specific statute] will be considered as an exception to, or qualification of, the general statute.'" *Wash. State Ass'n of Counties*, 199 Wn.2d at 13 (alteration in original) (quoting *Wark v. Wash. Nat'l Guard*, 87 Wn.2d 864, 867, 557 P.2d 844 (1976)).

The majority holds that both the general privilege contained in RCW 74.04.060(1)(a) and the confidentiality protection of RCW 13.50.100 apply to

juvenile records. However, confidentiality and privilege are distinct concepts. When a privilege applies, it operates to prohibit discovery under CR 26. As an absolute bar to discovery, a privilege impedes the truth-seeking process inherent in our judicial system and, as the majority notes, this is why "we strictly and narrowly construe them to exclude the least amount of relevant evidence." Majority at 6; *Lowy v. PeaceHealth*, 174 Wn.2d 769, 778, 280 P.3d 1078 (2012). Confidentiality is a distinct concept that does not create an absolute bar to discovery and judicial inquiry. *State v. Thompson*, 54 Wn.2d 100, 104-05, 338 P.2d 319 (1959) ("It does not necessarily follow from the use of the word '*confidential*,' that it was the legislative intention that this word have the same import as the word 'privileged.'"); *State v. Harris*, 51 Wn. App. 807, 813, 755 P.2d 825 (1988) (describing "judicial reluctance to equate confidentiality requirements with testimonial privileges").

Unlike the general privilege in RCW 74.04.060(1)(a), RCW 13.50.100 is a limited confidentiality statute that applies directly and exclusively to juvenile records. Specifically, RCW 13.50.100(7) provides, "A juvenile, his or her parents, the juvenile's attorney, and the juvenile's parent's attorney, shall, upon request, be given access to all records and information collected or retained by a juvenile justice or care agency which pertain to the juvenile."[1] In enacting RCW 13.50.100 against

---

[1] Ch. 13.50 RCW explicitly includes DCYF in its definition of "juvenile justice or care agency." RCW 13.50.010(1)(c).

the existing, general backdrop of RCW 74.04.060(1)(a), the legislature modified the process for accessing juvenile records by designating such records as "confidential" and clearly providing that they "shall be released *only* pursuant to this section." RCW 13.50.100(2) (emphasis added). Construing RCW 13.50.100 as a modification to the general privilege found in RCW 74.04.060(1)(a) gives both statutes meaning, where the majority's construction could render RCW 13.50.100 superfluous in certain instances. We presume the legislature does not engage in superfluous acts and, instead, "we interpret and construe all statutes such that all the language used is given effect, with no portion rendered meaningless." *Landesberg v. Fairway Vill. Homeowners Ass'n*, 30 Wn. App. 2d 660, 669, 546 P.3d 502 (2024) (citing *City of Seattle v. Long*, 198 Wn.2d 136, 148, 493 P.3d 94 (2021)). Furthermore, this reading accords with our mandate to strictly construe the statutory privilege contained in RCW 74.04.060(1)(a).

Nonetheless, I agree with the majority's conclusion that in these cases the records sought clearly "pertain[] to the plaintiffs" and must be disclosed under RCW 13.50.100(7). Majority at 12. I therefore respectfully concur in affirming the trial courts' orders.

Stephens, C.J.